Before I begin I want to plug in my computer and then secondly thank the Honorable Darnell Jones for sitting with us a very distinguished jurist from the Eastern District of Pennsylvania and an old friend and colleague of mine going back to my days on the state court and we're really fortunate and lucky to have you here so thanks for helping us out. Thank you my honor thank you. First matter is U.S. versus Navedo. Good afternoon may it please the court my name is Darren Gelber G-E-L-B-E-R and I represent the defendant below and the appellant here Alexander Navedo. May I respectfully request to reserve three rebuttal time. Your honors this case presents what I believe is a very interesting issue and that is whether Mr. Navedo's close physical proximity standing next to a person who was holding in his hand what the police believed to be a gun whether that fact alone provided the police with reasonable suspicion to detain him and whether his retreat back into his home elevated any reasonable suspicion to a level of probable cause that permitted the police to enter Mr. Navedo's home without a warrant. From your perspective when did the arrest occur? The arrest occurred when Mr. Navedo was tackled by the officers. It was closed my understanding is from the record and I was there that Mr. Navedo was in the process of attempting to enter into his room when he was tackled and both the officer and Mr. Navedo fell into a door that was opened by their physical force of falling down. And when the door opened the officer said he saw was it I guess some rifles rifles and guns and ammunition? Inside of the room. Rifles and pistols I guess inside. I believe just rifles and ammunition. Now the government would ask the court as it did below to try to factor in to this analysis some factors that I suggest have no really no bearing here. For instance the government would repeatedly ask this court to take note of a recent shooting in the area. But I think an examination of the record below reveals that whatever shooting took place took place about two months earlier about three doors down in a high-rise apartment building inside. And the officers had no reason at all, no suspicion, no connection to link Mr. Navedo or his home with the shooting that took place two months earlier. What's his address? 323 Park Avenue I believe your honor. It's over in the Beaumont area is that where it is? I'm not familiar with the makeup of the area but it's a mixed industrial residential area. There are apartment buildings, there are light industrial businesses in the area, there's a church nearby also. But clearly nothing in the record would support a finding of a high crime area. No the question wasn't asked there was no evidence induced below to suggest that this was a high crime area. Your brief if I recall correctly concedes that the government had probable cause with respect to Pozo. I'd be hard-pressed to argue otherwise. The police seem to have observed him with a gun in his hand in a public street. Well I thought they In an area open to the public, open to public view. My recollection was two guys come on to the porch, one guy's a backpack, Pozo pulls a gun out of the backpack, shows it, Navedo comes to the front door. There's some contradiction in the record about whether this happened on the steps leading up to the front porch or just at the bottom of the steps or actually on the steps itself. But that a legal gun to another guy but it looks like a gun transaction. Well it looks like a person holding a gun. The officers did not articulate despite repeated invitations, did not articulate any objective reason to think that there was a gun transaction going on. Then why would you concede that there's probable cause with respect to Pozo? If it's a legal firearm, Pozo, is it illegal for someone to hold a legal firearm in New Jersey? What I'm suggesting is that the basis to approach Pozo who is holding a gun. Okay that's different from conceding probable cause but you're saying there was a legitimate grounds for a terror inquiry of at least of Pozo. Yes your honor. If I misspoke a few moments earlier then I then I apologize. In this case the government cites it in its brief. I'm surprised they cite it. Virgin Islands versus UBILES, I think it is U-B-I-L-E-S, which would suggest that just having a gun in a public street is not probable cause for arrest. Yes your honor and we have to take Mr. Nevado as even one step attenuated from that. He's not possessing the gun, he's not touching the gun, he's standing near a person who has a gun. So whatever the situation might have been with regard to Mr. Pozo who is holding the gun, certainly we have to factor in that Mr. Nevado is nothing than standing a few feet away from him. And when the police attempt to approach him your honor, I suggest and I believe that he had the lawful right to retreat into his home. Now this is not a case like the litany of cases cited by the government where clearly there was probable cause to effect an arrest of somebody who then attempts to run away and in effect play games is some of the terminology that some of the cases use. Well I think the term probable cause is really slopped around here. In fact the government, like Mr. Romanova, seems to conflate probable cause and articulable suspicion. But Wardlow, which is a case I'm assuming you're referring to. Yes. The flight in that case did not give rise, no I'll take it back, it may well give rise to probable cause, but the court's inquiry was in terms of a Terry stop. Lavelle was a case where flight gave rise to probable cause. But as I think about it, I think Wardlow was a situation where the flight gave rise to articulable suspicion, not probable cause to arrest. In that case your honor, my recollection is that the officers had very solid information at reasonable suspicion or probable cause. That the defendant there was engaged in narcotics trafficking. And when they attempted to approach, then came the flight and the retreat into the house. Nevertheless in Wardlow they spoke to investigatory Terry type stop and the right to do that. Yes. In this case as I recall the trial judge in his findings found that there was probable cause to arrest. Yes your honor. My question is probable cause to arrest for what the question of that. I represent Mr. Lavelle below. I asked the officer specifically why was he attempting to arrest Mr. Lavelle. There was an objection that was sustained. Yes. I'm looking at Wardlow now. Wardlow was Terry. The flight did not give rise to probable cause and Terry it was. The court said this case involving a brief encounter between a citizen and a police officer on a public street is governed by the analysis we first applied in Terry. It's a Terry case. Yes your honor. But is that the law that the officer has to identify the specific crime or is it enough for the officer to believe criminal activity is afoot? Well I wouldn't hold the officer to a standard that requires him to announce a specific statute in the subsection. But he ought to have been able and I think the question was a legitimate one to articulate some sort of reason to believe that Mr. Lavelle individually had done something that aroused his suspicion that Lavelle was violating the or my partner and I thought it was an illegal gun transaction. Sale of an illegal firearm on the porch of the house. It's nice that he thought that but he had no objectively reasonable basis upon which to make that conclusion. The only facts that he could derive that conclusion from were that Mr. Novato was standing next to Mr. Pozo. Well they certainly don't have probable cause when they walk, when they get out of their car. They mostly have right? At most and I don't believe they did even then your honor. You concede they have reasonable suspicion to approach Pozo but not the other two guys? Yes your honor that's correct. But the same reason they have reasonable suspicion of approach Pozo i.e. an illegal firearms transaction implicates the other two guys that are part and parcel of the the conversation. I don't believe they have reasonable suspicion to believe that there's an illegal firearms transaction taking place. I believe they have a reasonable articulable suspicion that Pozo may not definitely but may be committing an offense by holding a gun out in the open in a place where people can see it and they're entitled to inquire of him to stop him and detain him but to suggest that they have an objectively reasonable basis to conclude that a gun transaction is taking place I believe requires a leap that this record doesn't allow. If you add what transpired in terms of his conduct, the men with the bag, Pozo's with the book bag, if you add that with the appellant seeing the officer's approach and turning and running, running upstairs, arguably the officer could conduct at least a Terry type stop for investigative purposes only but his testimony as I recall from the record was that when he ran upstairs to try to do that, notwithstanding what the trial judge found in terms of probable cause, but that the officer inadvertently bumped into the appellant and they fell through the door as opposed to entering intentionally and finding these things and once they were inside he saw it in plain view. Is that a problem? Well, Your Honor, most respectfully I don't think that the officer inadvertently bumped into Mr. Nervato. That's what he testified to. No, I think he tackled Mr. Nervato. He didn't testify that he tackled him, did he? I think he did. Did the judge's record, his opinion, in his finding of facts say that he tackled him? I don't recall him finding that as a fact. He had wonderful advantages of text searches. He did say the question was okay so when you when you tackled him was the door opened or closed and the answer was it was opened. My recollection of the testimony, Your Honors, is that the detective chased my client up the stairs and when they got to the top of the stairs he tackled Mr. Nervato and in the process of the two of them falling down the door swung open and both of them landed miraculously inside of the apartment. Your Honor, I said and it's very confusing and it's kind of muddled. At one point, I went back last night and tried to find and I couldn't. I'll try to take a quick look here. I thought he said as soon as he tackled him he put him under arrest. He handcuffed him and put him in under arrest at that point and I thought he then said and then he saw the guns. I think that's correct, Your Honor. You still have some time. If you could just check where in the appendix that appears if it does appear that way. Yes, Your Honor. And I can ask Mr. Romano about it also. Yes, Your Honor. And I hope the court does not give much weight to the persistent allegations from the government that this was something that happened late at night and that somehow adds into the mix here. This happened at 730 or 8 o'clock at night in a major metropolitan city like Newark, New Jersey where it's not unusual for people to be outside. As I stated, this shooting took place about two months earlier at another location and there was no nexus between that shooting event and anything that the officers observed take place in front of my client's home. I just found it's page 70. The officer says, after I detained him and this is after he's tackled him. After I detained him, during that small encounter, that's when I found a shotgun on the bed. Two long rifles on the bed, one on the floor, an enormous amount of ammunition. Yes, Your Honor. Your Honor, I tried to detach myself as best I could from what the police found after Mr. Nevada was tackled. And I asked myself, could I, if I were an assistant United States attorney, credibly bring this witness before a judge and ask for a warrant based on what the officers observed? And I can only imagine the response if I produced this detective in front of a federal judge and said, elicited testimony that he was standing next to somebody who had a gun in his hand and when police got out of their car, he ran back into his house. And Your Honor, we'd like an arrest warrant for this person and a search warrant to be able to go into a house to get him. My inclination is that a federal judge would say, arrest him for what? Enter the house for what? Your Honor, crimes take place in public areas. Police are certainly entitled to act on what they see. And in this case, I think they were entitled to do something with respect to Mr. Pozo, stop and detain him. After all, he was the one with the gun in his hand. But Mr. Nevada, as a bystander, standing next to him, looking, not touching, not doing anything, I suggest to Your Honor, I've done nothing to arouse a reasonably objective police suspicion. And I thank the court for its time and I look forward to coming back in a few moments after my adversary. Thank you. Mr. Romano? May it please the court, John Romano from the United States. Did you try the case, Mr. Romano? No, I did not. You're a very lucky man. I had a lot of questions for you that now I can't ask. Well, Your Honor, I'd like to start first with what the officers knew because I think the adversary kind of downplays what they saw. The testimony was that they were waiting outside, sitting outside, and they were there for, you know, there was a gun transaction in the area recently, the shooting. You're putting a lot of rabbits into the hat here and a lot of key words. There was a gun transaction. There's no testimony about a gun transaction in the area before this night. I'm sorry, Your Honor. There was a shooting in the area and there was a report of people with guns in the area a couple of, you know, a month before. That's why they were sitting there. It was nighttime. You said a couple of and then you said a month. Was it two months or was it one month? The shooting was two months ago. The report was a month earlier. And they set up the steakhouse in the area. So they're sitting there. It's nighttime. But we can't ascribe any significance to that in any major city in America to say someone was seen with guns a month prior. I mean, then the whole, all of America is going to be subject to a lower constitutional standard. Sure, Your Honor. That's why they were sitting there. That's why I explained that. All right, but it's immaterial. Can we agree on that? We could agree it's mostly immaterial. I think that they had a reason. What was the date also? They were looking out for things. Well, they don't even need to have a reason. It's a free country. The police can be wherever they want to be, right? The action starts when they see what happens on the porch, right? Yeah, well, they see Mr. Nevado come outside. And at that point, they say that he looks like he's waiting for something or somebody. That's their testimony. And their eyes are drawn there. It's cold out. It's nighttime. They think there might be a drug transaction. That's the testimony of Suarez. This is how drug transactions occur. Someone's waiting outside. So they keep an eye open. At that point, two individuals walk up. And it seems like Nevado is expecting them, both of them. They talk. They have a little conversation. At that point, Pozo opens up a bag and starts pulling out a gun. The testimony of Suarez is that Nevado is very interested. He leans over and takes a look. The testimony of Dela Cruz is that Nevado is interested in this gun. And the testimony of both of them... I thought Dela Cruz wasn't even sure it was a gun. I thought Dela Cruz wasn't even sure at that point that it was a gun. In the car, they're fairly certain it's a gun. It looks like a gun. They're pretty sure about anything. Well, they see an object that looks like a gun. They're as far away as I am from you. I mean, they're a little further away than I am. They're close. They're sitting right outside the house. Now, the testimony is that he's showing it to Nevado, not the third person. And that testimony, I think, is clear. It's pages... Okay, so we've got the other two sees Nevado looking at a gun. Well, he's Well, the other individual is not looking at it. It's Pozo and Nevado who are involved in this. And Nevado is looking over, looking at it. At this point, Officer Dela Cruz testifies, and his testimony, I think, is pretty clear. He says, I believed that there was a gun transaction about to transpire. And that's not just out of nowhere. The basis is... So this is a preemptive arrest. We'll arrest him so he can't commit the crime that we think he's going to commit. Well, you don't have to wait until this money transaction, you know, money changes hands until the gun changes hands. And I think Suarez said we want to get out there before he pulls the gun completely out. I mean, we're on the streets in Newark here. And the testimony of Dela Cruz is, based on the observations that I conducted, were they both, the way they were both speaking to each other, the way the weapon was taken out of the backpack being shown, the way the interest, the defendant, showed towards the weapon. He thinks there's a gun transaction about to go out, go down. And I think at that point, they probably have probable cause. They don't have to wait for the actual... At that point, they have probable cause? Well, what if it was a legal weapon? I mean... Under New Jersey law, the gun is presumed to be illegal. And you mentioned Ubele's. Ubele's was based completely on Virgin Islands law, saying that guns are presumed to be legal on the streets. No, they didn't say presumed to be illegal. They said there was no law making it illegal. They're not presumed to be illegal. In New Jersey law... There was no law making it illegal. In New Jersey law, the gun is presumed to be illegal. And you cited Lovell, where we said that the validity of a seizure, in that case, was a search, under the Constitution, is driven by federal law, not state law. Yeah, but that's a drop of foot notice to New Jersey law, saying that there's this presumption in New Jersey, but that's not going to... I disagree, Your Honor, because they're completely different situations. Lovell, you're talking about a statute that has to do with the procedure of making an arrest, in other words, a misdemeanor presence rule. And in Lovell, they said, look, even if that's Virgin Islands law, it's federal law that governs whether there's probable cause or not. Well, Lovell wasn't Virgin Islands. Lovell was Virgin Islands. Ubele's was Virgin Islands. Ubele was also Virgin Islands. Even off the boat, you're right. They're both Virgin Islands. But in New Jersey, we have a statute that says, if you have a gun on the streets, it's presumed to be illegal. So it's a crime. So it's a completely different situation than Lovell. This is a crime. Under federal law, we have probable cause to believe a crime is being committed. You could make the arrest. So how does that just edify me, practically speaking? If I'm walking down the street in New Jersey with a holster with a gun in it, do they just arrest me, take me to the station, book me, and then I have an opportunity to produce my carry permit or something? It's a rebuttable presumption, and I would point your honor to, it's a case that's not in the briefs, but I did send it to Mr. Gelber, so he was aware of this. The Gatlin case, which is from Delaware, but it's a Third Circuit case, 613 F3rd 374, and in Delaware, it's the same thing. It's presumed to be illegal. And in that case, it was a reasonable suspicion case. No, but I'm asking, what happens? Do they just arrest people as soon as they see a gun, or do they effectuate a Terry stop and say, hey, I noticed you have a gun. It's presumed illegal. You have some explaining to do. Why do you have a gun? Is that the way it works? Well, in that case, they threw him to the ground, and they found a gun. Now, it was a reasonable suspicion case, like I said, but in that case, the officer had only received a tip that the man had a gun. And this court said it's presumed illegal under Delaware law, and so the officers were free to do that. And it has come up many times in New Jersey cases. Valentine, it's mentioned. Judge McKee, in one of your opinions, I think it's Horne or Steed. I get the two confused. It's mentioned. So it's a presumption. So at that point, Pozo has a gun. It's presumed to be illegal. I think it's beyond peradventure. They could probably arrest Pozo right there for probable cause. But they believe there's a gun transaction, so they might even have probable cause at that point as to Nevado, who's standing there interested in the gun. Mr. Romano, let's suppose that there were 25 people on that porch. Pozo pulls out a gun, and all 25 lean forward. The police get out, walk up to the porch, and all 25 run. Are you suggesting that there was probable cause or would be probable cause to arrest 25 people who leaned over and looked forward at a gun? Well, I think at that point, Your Honor, we would be, and maybe your honors are not buying the probable cause argument, there would at least be reasonable suspicion to investigate what's going on. Why are these people looking at a gun on the streets at night in Newark? There might be something going on. And if each of the 25 fled... Well, I would say that under LaVille, you would have probable cause at that point. To do what? You'd have probable cause to arrest them for... What crime? It would be, well, I mean, first of all, the officers do not need to know the specific crime. But you could have attempted gun sales. You could have, you know, selling a gun... Attempted gun sales would be the person who was attempting, presumably, to have 25 people leaning forward, looking at a gun that's been taken from a book bag. What crime did they commit? Well, Your Honor, you'd have, again, they could be purchasing the gun. It's a crime of being a witness to an illegal gun transaction? Well, Your Honor, I don't think we need to pick the person who might be buying the gun. In this case, we have Nevado, who looks like he's about to buy a gun. And that's illegal under any law. You know, I just looked at Gatlin as a case where there's a confidential informant who gave the police officers more information than just the guy walking down the street. So when they approached the defendant, they had information from an informant that the guy's carrying a concealed weapon. It's a different case. Well, it's a different case in the sense that the man had a gun. Here, the officers are sitting no further than me from you, and they see an illegal gun on the street... On Pozo. On Pozo, and another individual who is interested in it. If that's, if it's not probable cause at that point, it's at the very least reasonable suspicion. This court in Valentine said... I don't think any of us, at least I don't, I'm not sure any of us have a problem with Terry's dropping. Well, under that... The officers don't have to just close their eyes just to pursue Pozo. Well, at that point... I agree with the Chief Judge. I mean, the hard question here, from my perspective, is does flight automatically rise to the level of probable cause? Well, I think flight in various situations has different consequences. I think Your Honor mentioned Wardlow. Wardlow was a reasonable suspicion case. So there you had individuals walking down the street, late at night, things looked a little suspicious... When they walked, walked down the street, they were standing around, the defendant had an opaque bag in his hand, and the officers went there expecting to find drug dealers. They expected to find people who had drugs, people who were buying drugs, and they expected that the people who weren't directly involved in having the drugs could be serving as lookouts. They see the defendant, he looks in the direction of the police, he's got an opaque bag in his hand, which they could reasonably infer, based upon the high crime area and why they went there to begin with, that there were drugs in the bag, and the court said that gives rise to a Terry stop, and in the course of the Terry stop pat-down, they find the drugs. I agree with you, Your Honor, but in that situation, we didn't have anything... They were on the street at night, they were suspicious, they take off. That gives rise to reasonable suspicion. LaVille and other cases point out where you already have a gun. He's standing right next to a guy with a gun. He came out at night waiting for them. We have reasonable suspicion already. At that point, the flight elevates its probable cause. We can now have... Automatically? It's not automatic, Your Honor. I think LaVille says generally, but there's a whole series of cases. LaVille cites to Justice Brennan's dissent in Sharp, and in that case, he cites, it must be a page long of authority that stands for that proposition, and there's other cases I could at the time they encountered the defendant, the time he fled, what they had was a tantamount to probable cause that he had come off that ship, and that he was probably Cuban, and that he was on the island illegally. Your Honor, I disagree with you that that case is weaker than this case. In that case, the officer knew that a ship had run aground. He did not see those particular individuals get off the ship. He heard from a third party, an informant, said, yeah, two of those guys, they came off the ship too. So the officer, all he has now is a tip from someone, but these are some of the guys. He walks up to them. Which makes it like Gateland. It's similar. So he walks up to them, and they run off, and this court, and you were on that panel, said that elevated it to probable cause. Here, we have- Weren't LaVille, weren't the police also told where the people got off the boat illegally, on the boat illegally, where they went, the direction where they went, and they didn't see LaVille basically standing where the police officers were told the people who came off the boat went. I don't think that's how it happened. I think the two of them were sitting on a bench. They turned a corner, and the officer and the other, the informant said, yeah, those are two of the guys who came off the boat. That's all they had. The officers knew almost nothing in that case. And they said, and this court said that that elevated it to probable cause. Here we have- Gerber, who was the witness, independently advised Santos, the officer, that other illegal aliens had come ashore and were around the corner. He then offered to identify the other black males sitting on the bench, pointing to the defendant. So the officers themselves, though, didn't see anything. It was a tip. Here, the officers are seeing something right in front of them, and now all of a sudden, when they come out, boom, LaVille takes off. And Pozo also, you know, makes a move. And they arrest Pozo. They let the third individual go, which I think is important, because that individual wasn't looking at anything. Because he didn't look at the gun? Well, I think that they decided that Nevado was the one who was a bigger target. Here he is looking at the gun. Here he is interested in the gun. There were three officers. They would have gone after all three. Presumably, but they made a decision and they went after Nevado. And I think that- What if, what if when they approached, instead of taking off, evidencing perhaps a state of mind that doesn't help them in this case, what if they just casually walked away? Nevado just says, see you guys, casually walks back into the house. Slowly. I think they would have stopped him under Terry, and they would have been fully, that would have been fine to stop him under Terry. In his own house? Well, he wouldn't have been in his house if he had just walked away slowly. He makes it to the top of the stairs, and you know. I think if he walks away- They don't have a right to hop in a suit then, that's what I'm suggesting. If he walks away, it's a different case. Here he runs away. I think they had a right, if they got to him before he got inside under Terry- So it's the rate of acceleration that gives rights to probable cause. Excuse me? So you're saying it's the rate of acceleration. It's flight. It's complete flight. Well, if you walk away slowly, there comes a point between walking away and a full-out sprint. Somewhere in there, walking away, Terry's top, okay, gives rise to probable cause. You're saying full-out flight. What I'm trying to get at is, where do we draw the line if we would write an opinion like that? In this kind of a case, divorced from the surrounding circumstances that we have in Wardlow when I was at LaBelle and Gateland, how do you draw the line? Is it just the rate of acceleration if you leave at a fairly leisurely pace, Terry's top, no probable cause? The more you get towards full-fledged flight, you then approach probable cause? Is that the kind of rule that should come out of this case? I think it's probably a case-by-case basis. LaVille itself said it generally elevates to probable cause, and I think you do have to give some weight to the fact that the officers here and Ornelas, the Supreme Court says, you should be giving due weight to the inferences that the officers and the district court is drawing in this case. They're more familiar with the area, more familiar with what's going on, and here the officers are saying, looks like a transaction. The area would help you if there was an issue about it being a high-crime area. It's not a high-crime area as far as we're concerned. There's no testimony it's a high-crime area, but I think that there is, there's evidence that there have been, you know, shootings in the area, and again, I think those factors are more important where you're not seeing an illegal gun right in front of you. You know, Horn and Steeve, two cases that I know the two of you wrote recently, they don't see anything. They just see some suspicious behavior. The fact that it's a high-crime area is important in cases like that. Here they see a gun, and they see a man interested in the gun right in front of them. This is a completely different case. Has the Supreme Court ever indicated that flight is evidence of a guilty mind? I believe so, and Sharpe, which is the defense, cites a series of cases including Cibran, and I don't, you know, know the names of them exactly, but you know, that dissent has a series of cases that says, look, when you already have reasonable suspicion and now they take off, you know, there's a reason they're doing that, and officers have a right. This isn't about certainties. It's probabilities. They think there's a gun transaction, and that flight certainly helps them. But even in those cases, don't, doesn't the court speak to investigatory stops as opposed to probable cause to arrest for a crime, sir? No, because that's the standard for probable cause, probabilities. It's not certainties. If he touched the gun, I mean, Mr. Gelber keeps making the fact that he didn't touch the gun. If he had touched the gun, we would have had evidence now beyond a reasonable doubt that he possessed a gun, an illegal gun on the streets. We don't have to show that. I guess the problem I'm having is, is based upon your argument, that anyone who came out onto that porch and leaned forward and looked, according to your argument, would be subject to being arrested because it would be probable cause to arrest them for what I don't know, but for... If they had taken off immediately there afterwards upon seeing the police. They have probable, we don't have to show that they committed the crime. It's probable cause. And I want to point out, he stipulated... By special means, probable cause to arrest for what crime? Buying a gun on the street. Possession of a gun. Constructive possession of a gun. Buying a gun. It could be conspiracy. I mean, and I want to point out, but he stipulated to this gun. So it's not like he's going to be divorced. I don't understand your answer to Judge Jones's question, to his hypothetical. I mean, you're positing 25 people involved in an illegal gun transaction. That's the only rational conclusion to draw from his hypothetical, I would submit, is that you've got a whole bunch of curious people looking at something. And that's... I thought your answer was, well, that's, you know, here we've got three people, there you've got 25. But you're literally telling us that they could arrest all 25 of those people on the porch. Your Honor, it's a different case. I don't think we have to deal with it, but we don't have to know... That is probably the worst answer a lawyer can ever give for a hypothetical question. We know it's a different case. That's why we ask a hypothetical question. We don't have to know with certainty who is buying the gun. That's not what the officers have to show. It's a probability. And here we have suspicious activity. If 25 people come out and all are interested in the gun, then we have a probability that there's something going on here. There's a gun transaction, there's a... they possess the gun, that there's a conspiracy. Just because there's more than one person there, I don't think changes that. If you come out with a kilo of cocaine... So you're saying you wouldn't have probable cause to arrest all... If you could do it with manpower, you'd have probable cause to arrest all 25, then? If they all took off, then I suggest that maybe we would. And I'm sorry that I can't answer that question better, but here we... that's not the facts here. We have a guy looking at the gun right in front of us. The one individual looking at a gun who's interested in the gun. We don't have to show beyond a reasonable doubt that he was buying the gun. We don't have to show beyond a reasonable doubt he possessed the gun. That's not the standard here. And what about what I asked the opposing counsel? Has our court or Supreme Court ever said that for probable cause, you don't need to be able to cite the crime, you just need to know generally that some crime is being or about to be committed? LaVille says that. And I think LaVille refers to Supreme Court cases. They don't... the officers do not have to know what the crime is. They don't have to say, oh, it's this or this or this. It's that a crime is being... the standard is that a crime is being committed or has been committed. A crime which hopefully will, from their perspective, will later be identified as such. That's enough. Well, they pointed out here. I mean, the testimony is on page 88, gun transaction. That's a crime under any law. New Jersey law, federal law... No, that's not a crime under any law. Come on, Mr. Romano. A gun transaction... Yeah, on the streets. I wish that were the case. Unfortunately, it's not. Yeah, I think selling a gun out of a backpack on the streets is a crime anywhere. And it's certainly a crime... Well, again, I'm not even sure that's true. But what you said initially was a gun transaction is a crime anywhere. And again, I wish that was the case. That's not the case. Given what the Supreme Court has said about the Second Amendment's reach, seeing guns, particularly, and that's why I was asking about pistols versus rifles, seeing what you think is a shotgun, especially, inside of someone's apartment, I wonder why. That's hardly what seemed to maybe cause to arrest. But you're saying that's irrelevant because probable cause happened at the time of the flight. So had the door remained closed, he could have been arrested. I think he could have been arrested anyway. But the door and the testimony was that the door was open when he got there. He was opening the door, the door was open, and this stuff was all out in plain sight. And I would want to point out that regardless, I don't know if this isn't something you're concerned about, the constitutionality of this presumption in the New Jersey law, I don't think it's... It's not either before you and also not relevant because the officers can rely on that statute in good faith. And it's not, has not been declared unconstitutional. It's not, I agree, it's not in the case. So I don't think it is. Well, if you have no further questions, I'd ask that this court affirm. Thank you. Your Honor, most respectfully, I would waive the balance of my argument unless you have any other questions you'd like to ask me. Thank you, Mr. Gilbert. Thank you. Wise man, Mr. Gilbert, taking the matter under advisement.